**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **DAVID KERN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 11-1308-JWL** |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security disability benefits (SSD) and Supplemental Security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

**I.	Background**

Plaintiff protectively applied for both SSD and SSI on January 26, 2009, alleging disability beginning November 16, 2006.  (R. 14).  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law

Judge (ALJ).  (R. 14, 72-75, 99-100).  Plaintiff's request was granted, and Plaintiff appeared with counsel and testified at a hearing before ALJ Michael R. Dayton on May 6, 2010.  (R. 14, 30-65).  After the hearing, the ALJ propounded interrogatory questions to a vocational expert and proffered his responses to Plaintiff's counsel for further appropriate action.  (R. 291-306).  Counsel responded, noting that she had examined the interrogatory responses and had no comments to make.  (R. 307-08).

     ALJ Dayton issued his decision on January 7, 2011 finding that Plaintiff has the severe impairments of seizure disorder and diabetes with neuropathy of the lower extremities but that none of Plaintiff's impairments individually or in combination meets or medically equals the severity of a Listed Impairment.  (R. 16-17).  The ALJ assessed Plaintiff with a residual functional capacity (RFC) requiring that Plaintiff should avoid even moderate exposure to hazards, machinery, heights, etc., but finding no exertional limitations.  (R. 18).  In evaluating Plaintiff's impairments and assessing RFC, the ALJ summarized the record evidence, including Plaintiff's testimony and other reports, the medical treatment notes and examination reports of record, and the opinion evidence of record.  (R. 16-21).  The ALJ determined Plaintiff's testimony is not credible and accorded weight to the opinion evidence.  (R. 20-21).  He accorded "substantial weight" to the opinion of Plaintiff's grandmother regarding Plaintiff's daily activities, but rejected her opinion regarding physical restrictions because "there is no medical basis for these symptoms and limitations."  (R. 21).  With regard to medical opinions, the ALJ accorded Dr. Liow's opinion "little weight," Dr. Thomas's opinion "little weight," and Dr.

Siemsen's opinion "substantial weight." (R. 21). Based upon the RFC assessed and the responses of the vocational expert, the ALJ found Plaintiff is unable to perform any of his past relevant work, but that when also considering Plaintiff's age, education, and work experience, there are a significant number of jobs in the economy that Plaintiff can perform, represented by jobs such as a hand packager, a marker, and a food and beverage order clerk. (R. 22-23). The ALJ concluded that Plaintiff is not disabled within the meaning of the Act, and denied his applications. (R. 23).

Plaintiff sought Appeals Council review of the decision, and submitted additional evidence to the Council for its consideration. (R. 8-10, 468-75). The Appeals Council made the additional evidence a part of the administrative record and considered the evidence, but found that it did not provide a basis to change the ALJ's decision, found no reason under Social Security Administration rules to review the decision and denied Plaintiff's request for review. (R. 1-6). Therefore, the ALJ's decision became the final decision of the Commissioner. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff timely filed this case, seeking judicial review of the Commissioner's decision. (Doc. 1).

## II.     Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

§ 405(g)); see also, 42 U.S.C. § 1383(c)(3) (SSI decision "shall be subject to judicial review as provided in section 405(g)"). Section 405(g) provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period

of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. § 416.920 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in weighing the medical opinions and failed to base his RFC assessment on substantial record evidence. The Commissioner responds that the ALJ properly evaluated the medical opinions and properly assessed Plaintiff's RFC in light of the record evidence. The court addresses the issues in the order presented in Plaintiff's Brief, but finds no error in the decision.

## III.     Evaluation of the Medical Opinions

Plaintiff claims the ALJ's weighing of the medical opinions was inadequate and incomplete. He claims the ALJ should not have accorded substantial weight to Dr. Siemsen's opinion, failed to provide sufficient reason to reject the opinion of Dr. Thomas, and failed to address and weigh the opinion of nurse-practitioner Trevolt. He argues that the ALJ provided only one reason to reject Dr. Thomas's treating source opinion, and did not adequately explain that reason. He argues that although the ALJ attempted to

recontact Dr. Thomas and was unable to do so, the decision "did not provide an adequate basis to discount Dr. Thomas [sic] opinion."

The Commissioner argues that the ALJ appropriately considered and weighed Dr. Thomas's opinion. He notes the ALJ's finding that Dr. Thomas's opinion suggesting exertional limitations was inconsistent with the doctor's opinion suggesting a well-controlled seizure disorder, and the ALJ's finding that there is no evidence in the record showing a medically determinable back impairment which would cause exertional limitations. The Commissioner points to record medical evidence tending to support the ALJ's findings. The Commissioner also argues that the ALJ, in fact considered and discussed Mr. Trevolt's opinion, and specifically noted his opinion that Plaintiff's seizures were well-controlled with medication.

### A.     **The ALJ's Evaluation of Dr. Thomas's and Dr. Siemsen's Opinions**

The ALJ summarized Dr. Thomas's records on the sixth page of the decision. (R. 19). He noted that Dr. Thomas treated Plaintiff for epilepsy, noting seizure activity one or two times a year, that the records indicated stable seizure control on current medications and a medical risk of falling as a result of the seizures. He noted that Dr. Thomas provided a seizure questionnaire which "indicated that the claimant's seizure disorder was controlled with medications, except for an occasional breakthrough seizure; about once or twice a year." (R. 19). In the very next sentence, the ALJ noted that nurse-practitioner Keith Trevolt also "completed a seizure questionnaire for the claimant and indicated that the claimant has about 1 to 2 seizures per year, and that the claimant's

seizure disorder is controlled with medications." Id.  The ALJ noted that Dr. Thomas also treated Plaintiff for diabetes mellitus, that blood sugars were usually in the normal range with occasional elevation beyond 200, that (hemoglobin) A1C levels are generally in the normal range, there is no sign of retinopathy, and the examinations are essentially normal. Id.  In addition to the seizure questionnaire, the ALJ noted that Dr. Thomas completed a medical source statement on April 8, 2010 in which he opined that Plaintiff had significant exertional limitations.  (R. 21).  He gave these exertional limitations "little weight" because they are inconsistent with Dr. Thomas's seizure questionnaire "in which he notes a fairly well controlled seizure disorder, with one or two seizures a year." Id.  The ALJ stated that he had attempted to recontact Dr. Thomas because his "opinion failed to reveal the significant facts and information relied upon to render his opinion," but that Dr. Thomas failed to respond to the inquiry. Id.

> The ALJ also explained his evaluation of Dr. Siemsen's opinion:
>
> The State agency medical consultant, Gerald Siemsen, M.D. (exhibit B13F [(R. 389)]), determined that the claimant did not have any exertional restrictions, but was required to avoid even moderate exposure to hazards, machinery, heights, etc., due to seizures.  The undersigned finds that Dr. Siemsen's opinion is well-supported by the evidence of record and it [sic] gives his opinion substantial weight.

(R. 21).

### B.    **Standard for Evaluating a Treating Source Opinion**

A physician who has treated a patient frequently over an extended period of time (a treating source) is expected to have greater insight into the patient's medical condition,

and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

If a treating source opinion is not given controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### C. Analysis

Relying upon the "treating physician rule" as discussed above, Plaintiff argues that the ALJ did not provide adequate reasons for discounting Dr. Thomas's opinion regarding

exertional limitations and for nonetheless according substantial weight to Dr. Siemsen's opinion.  The court does not agree.

Plaintiff ignores that disability under the Social Security Act is defined as an "inability to engage in any substantial gainful activity by reason of any <u>medically determinable</u> physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Here, at step two of the sequential evaluation process the ALJ found that Plaintiff has medically determinable impairments of seizure disorder, diabetes, obesity, right shoulder injury <u>without ongoing symptoms</u>, and tension, anxiety, and (assumed) depression.  (R. 16-17).  He specifically found that the record evidence does not suggest <u>functional limitations resulting from obesity</u> and does not establish a <u>medically determinable impairment</u> for back pain as alleged by Plaintiff.  (R. 16-17).  Plaintiff alleges no error in the ALJ's step two findings.  Plaintiff points to nothing within the administrative record which suggests a medically determinable impairment which is producing the exertional limitations opined by Dr. Thomas.  The ALJ found no basis in the record evidence for such limitations, and recontacted Dr. Thomas seeking to determine the basis for them.  (R. 288).  He asked Dr. Thomas to list any additional demonstrable impairments which Plaintiff has, and to explain how each diagnosis was made.  (R. 288).  He asked Dr. Thomas to explain which impairment produced the exertional, postural, and environmental limitations contained in his medical source statement.  <u>Id.</u>  Dr. Thomas did not respond to the ALJ's inquiry.  (R. 21).  Therefore, the record is simply without any proper evidentiary basis for most of the limitations to which

Dr. Thomas opined. Plaintiff asserts that the ALJ did not provide sufficient reasons to discount or reject Dr. Thomas's limitations. To the contrary, it would be error for the ALJ to rely upon limitations for which there is no basis in a medically determinable impairment regardless of the source of the limitations. The ALJ's determination to accord some weight ("little weight") to Dr. Thomas's opinion is justified by the fact that Plaintiff has a medically determinable seizure disorder and Dr. Thomas opined regarding a fairly well controlled seizure disorder, with one or two seizures a year, and Dr. Thomas's opinions regarding exposure to hazards and heights might be accorded a "little weight" on that basis.

Plaintiff's claim of error in the ALJ's alleged failure "to address and assess weight to the opinion of [Mr.] Trevolt" is likewise unavailing. The ALJ specifically addressed Mr. Trevolt's opinion that Plaintiff has 1 to 2 seizures per year and his seizure disorder is controlled with medications, in the very next sentence after he noted Dr. Thomas's opinion that Plaintiff's seizure disorder is "controlled with medications, except for an occasional breakthrough seizure; about once or twice a year." (R. 19). Further, the ALJ stated his finding "that due to the claimant's seizure disorder and diabetes mellitus, the claimant should avoid even moderate exposure to hazards, machinery, heights, etc." (R. 20). This finding demonstrates that the ALJ accorded at least some weight to the opinions of Dr. Thomas and Mr. Trevolt with regard to Plaintiff's seizure disorder. Moreover, as Plaintiff acknowledges, Mr. Trevolt is "an 'other source,'" whose opinion is generally worthy of less weight than the opinion of an acceptable medical source such as

Dr. Thomas. Where the two opinions are virtually identical and the ALJ accords the opinions some weight and states the weight accorded to the physician's opinion, the court sees no reason for the ALJ to specifically state what weight he accorded to the nurse-practitioner's "other" medical source opinion. Keyes-Zachary v. Astrue, No. 11-5152, 2012 WL 4076114, *2, ___ F.3d ___, ___ (10th Cir. 2012) (citing Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.")).

    Finally, Plaintiff provides no reason why Dr. Siemsen's opinion should not have been accorded "substantial weight." Although Dr. Siemsen's "Case Analysis" does not use the terms reflected in the ALJ's decision as quoted above, the ALJ properly characterized the opinion. Dr. Siemsen specifically stated that he "affirmed as written" the Single Decisionmaker's (SDM) RFC assessment. (R. 389). The SDM's RFC found no exertional limitations, no postural limitations, no manipulative or visual limitations, no communicative limitations, and only a single environmental limitation--that Plaintiff must avoid even moderate exposure to hazards (machinery, heights, etc.). (R. 365-72). The SDM stated that the environmental limitations are based on "seizure precautions." (R. 369). This is the assessment Dr. Siemsen "affirmed as written," thus adopting it as his own opinion. Having suggested no medically determinable impairment upon which to base additional limitations, and in the absence of a contrary medical opinion to which

greater weight might properly be accorded, Plaintiff has shown no error in according "significant weight" to Dr. Siemsen's opinion.

Plaintiff has shown no error in the ALJ's evaluation of the medical opinions.

## IV. RFC Assessment

Plaintiff claims the ALJ's RFC assessment was not based on substantial record evidence. He argues that the ALJ erred in relying on the opinion of an SDM (Mr. Rohleder), affirmed by a nonexamining physician (Dr. Siemsen). He argues that Dr. Thomas was the only physician who had an opportunity to review the entire record, and was a treating physician familiar with Plaintiff's condition. He argues that the ALJ did not adequately consider Dr. Henderson's consultative examination report which showed limited range of motion in Plaintiff's back, and diabetic neuropathy changes in his extremities. Finally, he argues that "the ALJ does not appear to fully consider [Plaintiff's] breakthrough seizures," and erroneously excluded additional information added to the record after July 28, 2009 when Dr. Siemsen affirmed and adopted the SDM's RFC assessment.

The Commissioner responds that the ALJ properly assessed Plaintiff's RFC. He points out that the ALJ neither mentioned the SDM, nor cited to the Physical RFC Assessment form completed by him. He argues that "the ALJ adopted Dr. Thomas' opinion where it was supported by the medical evidence," and thoroughly considered the medical opinions of Dr. Thomas, Dr. Henderson, and Dr. Siemsen. (Comm'r Br. 9). He argues that the ALJ considered Dr. Henderson's finding of diabetic neuropathy in the

legs, and noted that later testing was normal, and that the neuropathy produced no additional exertional limitations. Finally, the Commissioner points out that the ALJ considered Plaintiff's breakthrough seizures and the evidence submitted after Dr. Siemsen reviewed the record.

### A.     Standard for Assessing RFC

RFC is an assessment of the most a claimant can do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); see also, White, 287 F.3d at 906 n.2. The RFC assessment will be made "based on all the relevant evidence in your case record." Id. The Commissioner has provided eleven examples of the types of evidence to be considered in making an RFC assessment, including: medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, attempts to work, need for a structured living environment, and work evaluations. Soc. Sec. Ruling (SSR) 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2012).

### B.     Analysis

The court is not persuaded by Plaintiff's arguments regarding the ALJ's RFC assessment. The court has already determined there was no error in the ALJ's evaluation of the medical opinions of Dr. Thomas and Dr. Siemsen, and it will not repeat that analysis here.

As Plaintiff notes, "[a]n SDM is not a medical professional of any stripe, and the opinion of an SDM is entitled to no weight as a medical opinion, nor to consideration as

evidence from other non-medical sources." (Pl. Br. 15, n.5) (quoting <u>Jordan v. Astrue</u>, Case No. 08-1045-MLB, <u>slip op.</u> at 6 (D. Kan. Apr. 8, 2009) (<u>Rep. and Rec.</u>)). However, as discussed above, Dr. Siemsen "affirmed [the SDM assessment] as written," thus adopting it as his own opinion. Therefore, as previously explained, it was appropriate for the ALJ to rely upon <u>Dr. Siemsen's</u> Physical RFC Assessment opinion in assessing RFC.

The ALJ specifically considered Dr. Henderson's consultative examination report. Other than pointing to "limited range of motion" in Plaintiff's back, and "diabetic neuropathy changes" in his legs, Plaintiff makes no attempt to explain how the ALJ's consideration was inadequate. Plaintiff points to no record medical evidence suggesting functional limitations resulting from these findings. Perhaps Plaintiff wants the court to find that Dr. Henderson's finding of "Lumbar arthralgias" constitutes an impairment justifying functional limitations from Plaintiff's back pain. However, "lumbar arthralgia" is merely another way to say "low back pain," and as discussed above, the ALJ found there is no medical evidence in the record suggesting a medically determinable impairment causing such limitations.

Dr. Henderson's report does not require a different finding. Dr. Henderson found Plaintiff had no difficulty getting on and off the examining table; no difficulty with heel walking, but "moderate-severe difficulty with toe walking due to ingrown toe nails," and mild difficulty squatting and arising from the sitting position. (R. 355). In his "Conclusion" regarding lumbar arthralgias, Dr. Henderson stated:

> The patient describes a history of low back pain having been in a motor vehicle accident at age 17. X-rays have been performed although not available for review today. He describes a knot in the back. Today, it is difficult to assess muscle spasm with his large size. He shows limited dorsal range of motion but otherwise bends 2" to the floor. Reflex is absent in the right ankle. There is difficulty with orthopedic maneuvers <u>as described</u>. Again, weight loss may be helpful.

(R. 356) (emphasis added). When the X-rays were read, they revealed satisfactory height and alignment, adequately maintained disc space, no end plate spurring or eburnation, no abnormalities affecting the posterior elements or sacroiliac joints, and an "[i]ncidental note" was made of minor spondylosis. (R. 357). After recognizing that the X-rays showed no impairment, that Dr. Henderson was unable to discern a muscle spasm, that Plaintiff (despite obesity) could bend 2" to the floor, that Plaintiff's right ankle is affected by his diabetic neuropathy, and that Plaintiff's difficulty with orthopedic maneuvers was caused by his ingrown toes, what is left in Dr. Henderson's report supporting Plaintiff's allegation of low back pain is Plaintiff's <u>personal report</u> and a <u>5 degree</u> reduction in ability to bend <u>backwards</u> (dorsal range of motion) (extension of dorsolumbar spine reduced from 25 degrees to 20 degrees (R. 354)). Further, Plaintiff's personal report is of limited value, if any, since the ALJ found Plaintiff's testimony not credible, and Plaintiff does not contest that finding. Dr. Henderson's report does not support Plaintiff's argument that the RFC assessed is not based on substantial record evidence.

Moreover, the ALJ explained that his finding that diabetic neuropathy was a severe impairment was because of Dr. Henderson's report, even though "later testing has indicated normal testing which raises some doubt as to this diagnosis but also indicates no

16

exertional limitations other than those found already in the residual functional capacity assessment." (R. 19-20). In short, the ALJ's consideration of Dr. Henderson's report is supported by substantial record evidence, and Plaintiff has not shown it was inadequate.

Plaintiff's argument that the ALJ did not fully consider Plaintiff's breakthrough seizures or the evidence placed in the record after Dr. Siemsen's evaluation fares no better. As the Commissioner points out, and as the court noted above when discussing the ALJ's evaluation of the opinion evidence, the ALJ specifically considered the evidence regarding breakthrough seizures. (R. 18-20). To the extent Plaintiff is arguing that the ALJ did not consider the evidence presented to the Appeals Council after the ALJ's hearing decision, the court finds no error there. Although it is clear the ALJ did not consider that evidence, the Appeals Council specifically stated that it had considered "the additional evidence listed on the enclosed Order of Appeals Council," and "found that this information does not provide a basis for changing the Administrative Law Judge's decision." (R. 2). That is sufficient consideration in this case. Plaintiff does not allege error in the Appeals Council's finding.

Plaintiff's argument that "[s]ince the ALJ relied on the assessment from Dr. Siemsen, that would be to the exclusion of additional information added to the records after July 28, 2009" suggests Plaintiff's belief that an RFC assessment must be drawn from the medical opinions or at least from the medical evidence in the record. That is not the law in the Tenth Circuit. The determination of RFC is an administrative assessment, based on all the evidence in the record regarding how plaintiff's impairments and related

symptoms affect his ability to perform work related activities. SSR 96-5p, West's Soc. Sec. Reporting Serv., 126 (Supp. 2012) ("The term 'residual functional capacity assessment' describes an adjudicator's findings about the ability of an individual to perform work-related activities."); SSR 96-8p, West's Soc. Sec. Reporting Serv., 144 (Supp. 2012) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). Because an RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. §§ 404.1545(a), 416.945(a).

In addition, the final responsibility for determining RFC rests with the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946. More than a year ago this court clarified that the narrative discussion required by SSR 96-8p to be provided in an RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed. Castillo v. Astrue, No. 10-1052-JWL, 2011 WL 13627, at *10-11 (D. Kan. Jan 4, 2011). "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment." Id.; see also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, at *13 (D. Kan. Apr. 4, 2011). There is no need in this case, or in any other, for the

Commissioner to base the limitations in his RFC assessment upon specific statements in medical opinions or in other medical evidence in the record. Plaintiff has shown no error in the ALJ's RFC assessment in this case.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 26th day of September 2012, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**